*In re* ESTATE OF ESTHER THORP, Deceased (Elizabeth T. Miller, Ex'r of the Will of Esther Thorp, Deceased, Plaintiff-Appellee, v. Steven Kent Luker, Defendant-Appellant).

Fourth District   No. 4—95—0501

Opinion filed August 8, 1996.—Rehearing denied September 10, 1996.

Steven Kent Luker, of Decatur, appellant *pro se*.

No brief filed for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

In October 1993, Esther Thorp (testatrix) died testate leaving an estate in excess of $550,000. She left the following heirs at law (emphasized individuals predeceased the testatrix):

(1) Elizabeth T. Miller, sister;
(2) *Howard Thorp*, brother;
&mdash; George Thorp, nephew;
(3) Clyde Thorp, brother;
(4) *Luretta Luker*, sister;
&mdash; Mary Alice McIntosh, niece;
&mdash; Phyllis Ann Swearingen, niece;
&mdash; *Charles Luker*, nephew;
&mdash; Charles C. Luker, grandnephew;
&mdash; Phillip I. Luker, grandnephew;
&mdash; Steven K. Luker, grandnephew;
(5) *Dwight Thorp*, brother;

— *Dwight Harold Thorp*, nephew;
— Betty Ann Thorp, grandniece
— Alice L. States, grandniece.

In November 1993, testatrix's will, dated April 14, 1976, was admitted to probate and Elizabeth T. Miller was named as the executrix. In December 1993, the executrix filed a "Complaint to Construe Will and for Other Relief" (Complaint). Except for Betty Ann Thorp and Alice L. States, all of the aforementioned heirs and legatees were named as defendants. The Complaint alleged that two paragraphs of the will were ambiguous.

The sixth paragraph reads:

"I hereby direct my executor to sell all of my real estate at private sale within one year after my death. My Executor is hereby directed to give first option to buy, as against all the world, to my brother Howard Thorp, and his immediate family, and to my sister, Elizabeth T. Miller, and her immediate family. Said Executor shall sell to the highest bidder."

The executrix stated that it is unclear whom testatrix meant when she referred to the "immediate family" of Thorp and Miller, or whether those individuals were to bid only against each other or against all the world. Since neither executrix nor her immediate family wishes to purchase testatrix's real estate, the only remaining person with the "first option," George, offered $343,000 for the farm in accordance with an appraisal. The complaint requested the court's permission to go forward with the sale.

The executrix also claimed subparagraph eight (f) of the will was ambiguous. It reads:

"(f) After the payment of all of the above, my said executor shall divide all the rest of said money in said estate as follows, per stirpes and not per capita:

To my sister, Elizabeth T. Miller, one-fourth thereof; To my brother Howard Thorp, one-fourth thereof; To my brother, Clyde W. Thorp, one-fourth thereof; to my niece, Mary Alice McIntosh, one-twelfth thereof; to my niece, Phyllis Ann Swearingen, one-twelfth thereof; and to the following children of my deceased nephew, Charles C. Luker, a one-thirty-sixth interest each to Charles C. Luker, Phillip I. Luker, and Stephen K. Luker."

The executrix maintained that subparagraph eight (f) was ambiguous because Howard had predeceased testatrix and it was not clear whether his share should go to his son, George.

Defendant Stephen Luker, acting *pro se*, filed an "Objection to Elizabeth T. Miller's Complaint to Construe Will and for Other

Relief." Defendant argued that George Thorp should have to bid "against all the world." Defendant also stated that he thought the farm was worth considerably more than the $343,000 appraised value which George proposed to pay and prayed that the court prevent the sale of the farm to George.

A hearing was set for February 1, 1994. Defendant did not attend, and was not represented at, the hearing. As of that date, the court entered an order allowing George to take his father's share and allowing George to purchase the farm for $343,000. On February 7, 1994, defendant filed a motion to set aside judgment. A hearing on this motion was held on February 28, 1994, and again, defendant did not appear, nor was he represented. The court denied defendant's motion to set aside judgment, and defendant appealed, contending that the trial court did not have personal jurisdiction over him. This court affirmed. *In re Estate of Thorp*, No. 4—94—0237 (October 11, 1994) (unpublished order under Supreme Court Rule 23.)

In the meantime, on May 10, 1994, defendant attempted to file a "counterclaim" with the trial court. The record indicates that defendant never paid the filing fee. Thereafter, defendant continued sending the county clerk numerous letters and legal documents, the relevance of which is not clear.

On May 19, 1994, the executrix mailed defendant a check for $1,666.67 in accordance with a specific legacy in testatrix's will. Defendant did not negotiate the check, but delivered it to the county clerk. The executrix stopped payment on the check. The executrix subsequently filed an "Amended First Current Account" and a "Second and Final Account." The executrix asked the trial court to approve the accounts and to authorize the final payments and distributions under the will. A hearing was set for June 6, 1994.

At the June 6 hearing, defendant appeared and entered oral objections. Defendant argued that both the attorney fees and executrix's fees were unreasonable; that the executrix's loan of $100,000 to George Thorp for the purchase price of the farm was improper; and the testatrix's specific bequests to the United Methodist Church of Clinton, Illinois, and the Cunningham Children's Home of Urbana, Illinois, were not adjusted for inflation. The trial court overruled defendant's oral objections and granted the executrix the relief sought in the "second and final account." Part of that relief included depositing monies payable to defendant with the De Witt County treasurer in the event defendant failed to negotiate, within 30 days, the checks sent to him by the executrix. It appears as though defendant was entitled to receive approximately $17,411 under the will.

■ Defendant has made our review of his appeal difficult. He has failed to clearly frame the issues on which he is appealing. A reviewing court is entitled to have issues clearly defined with pertinent authority cited and is not simply a depository into which an appealing party may dump the burden of argument and research. *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 362, 630 N.E.2d 121, 130 (1994). The executrix has not been much help either, failing to file an appellee's brief. We review this case under the standards of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

Defendant apparently argues the trial court erred in finding both paragraph six and subparagraph eight (f) of the will to be ambiguous. It also appears that defendant argues that the trial court erred in allowing the sale of the farm on the terms set forth in the Complaint.

■ Before addressing these issues, we have an obligation to determine whether we have jurisdiction, even though the issue has not been raised by the parties. *In re Estate of Devey*, 239 Ill. App. 3d 630, 632, 607 N.E.2d 685, 686 (1993). Supreme Court Rule 304(b)(1) states:

> "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:
>
> (1) A judgment or order entered in the administration of an estate *** which finally determines a right or status of a party." 155 Ill. 2d R. 304(b)(1).

The committee comments to the rule state that subparagraph (b)(1) applies to orders that "are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." 155 Ill. 2d R. 304, Committee Comments, at lxxxiv. Orders within the scope of Rule 304(b)(1), even though entered before the final settlement of estate proceedings, *must* be appealed within 30 days of entry or be barred. *Devey*, 239 Ill. App. 3d at 633, 607 N.E.2d at 687. A central reason behind making the time for appeal of such orders mandatory, not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate administration. *In re Estate of Kime*, 95 Ill. App. 3d 262, 268, 419 N.E.2d 1246, 1250 (1981).

Rule 304(b)(1) is designed to prevent multiple lawsuits and piecemeal appeals, while encouraging efficiency and granting certainty as to specific issues during the often lengthy process of estate administration. *Devey*, 239 Ill. App. 3d at 632-33, 607 N.E.2d at 686-87. Without the Rule 304(b)(1) exception, an appeal would have to be

brought after an estate was closed, the result of which may require reopening the estate and marshalling assets that have already been distributed. That result would be both impractical and inefficient.

■ We conclude the time has passed for us to hear an appeal challenging either the construction of the will or the sale of the farm to George Thorp. A court order construing a will is binding on all the interested parties, and the executrix is entitled to administer the estate pursuant to the court order unless its terms are modified or set aside on appeal. *Glaser v. Chicago Title & Trust Co.*, 401 Ill. 387, 393, 82 N.E.2d 446, 448-49 (1948). The construction of a will is one of the specific issues in an estate administration which requires certainty. On February 28, 1994, the trial court entered an order granting the relief the executrix sought in the Complaint. The court ordered the sale of testatrix's farm and mandated a specific reading of the will. The court ordered the executrix to administer the estate pursuant to that construction of the will. While the exact dollar amounts to be received by the legatees were yet to be ascertained, their rights under the will had been finally determined. The court's order did not contemplate further action by the court on the issues addressed in that order. In short, the February 28, 1994, order falls within the scope of Rule 304(b)(1), and the time for appealing that order has passed. The order was in fact appealed, and the issues raised in the order have already been addressed by this court. See *Thorp*, No. 4—94—0237 (October 11, 1994) (unpublished order under Supreme Court Rule 23).

Defendant argues that the trial court did not have jurisdiction in the will construction suit (our No. 4—94—0237), and therefore its decision was void, because Betty Ann Thorp and Alice L. States were not named as defendants in the complaint to construe will. Subparagraph eight (f) left defendant and each of his brothers a one-thirty-sixth interest, but left nothing to Betty Ann and Alice or their father or grandfather. Betty Ann and Alice are accordingly not beneficiaries under subparagraph eight (f), but they are heirs at law of the testatrix under the statutory rules of descent and distribution. 755 ILCS 5/2—1(d) (West 1994) (entire estate of intestate decedent to brothers and sisters of the decedent in equal parts, allowing "to the descendants of a deceased brother or sister per stirpes the portion which the deceased brother or sister would have taken if living"). If the share of Howard Thorp passed to his son or to the other beneficiaries under subparagraph eight (f), then Betty Ann and Alice would take nothing. However, if the share of Howard Thorp lapsed and passed by intestacy then Betty Ann and Alice would take a part of that share. The anti-lapse statute does not apply to this case because George

does not take from "a descendant of the testator who dies before or after the testator." 755 ILCS 5/4—11 (West 1992). Betty Ann and Alice should have been made parties to the will construction proceeding.

Where there is no jurisdiction over a defendant or his property, the court has no power to go forward with an action against that defendant, and any judgment against that defendant is void and may be collaterally attacked. When two defendants are involved, and there is jurisdiction over the first defendant but not over the second, does the lack of jurisdiction over the second defendant render void the judgment against the first defendant? Is the second defendant a necessary or indispensable party whose presence is required for an effective judgment?

The federal courts have taken a pragmatic approach to this question, asking to what extent the absent defendant would be prejudiced, to what extent the existing defendant would be prejudiced, whether a better forum is available, and whether it is important to avoid piecemeal litigation. See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 19 L. Ed. 2d 936, 88 S. Ct. 733 (1968); Fed. R. Civ. P. 19(b). Some Illinois decisions, treating the matter as one of due process, simply declare that a judgment entered in the absence of a necessary party is null and void. *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 811, 480 N.E.2d 1312, 1326 (1985); see 4 R. Michael, Illinois Practice § 29.3, at 36-37 (1989) (Civil Procedure Before Trial); see also 735 ILCS 5/2—406(a) (West 1994) ("If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct such person to be made a party"). However, failure to join an indispensable party is not, contrary to what was said in some older authorities, a "jurisdictional" defect: the court can decide the case before it as to defendants who have been made parties even if it cannot decide the rest of the case because the absentee has not been made a party. F. James & G. Hazard, Civil Procedure § 9.21, at 444 (2d ed. 1977) (hereinafter Civil Procedure). The decree can be made binding on those beneficiaries who were parties to the suit. *Oglesby v. Springfield Marine Bank*, 385 Ill. 414, 430, 52 N.E.2d 1000, 1007 (1944); *Petta v. Host*, 1 Ill. 2d 293, 301, 115 N.E.2d 881, 885 (1953) (an order of probate is binding on all parties notified of the proceeding, but is a nullity as to interested parties who were not notified).

Courts have a choice to make whether the case can be usefully and fairly decided between the existing parties, or whether a decision under such circumstances would be a futile gesture or even the source of harm. Where the objection is not made until after judgment, the

objection should be rejected unless prejudice clearly appears. *State Farm Mutual Automobile Insurance Co. v. Haskins*, 215 Ill. App. 3d 242, 245, 574 N.E.2d 1231, 1234 (1991); *Allied American Insurance Co. v. Ayala*, 247 Ill. App. 3d 538, 544, 616 N.E.2d 1349, 1355 (1993); see *Provident*, 390 U.S. 102, 19 L. Ed. 2d 936, 88 S. Ct. 733; Civil Procedure § 9.21, at 444.

In the present case, the objection is raised, not by the two individuals who were not parties to the action, but by defendant, who was a party to the action. For all we know, Betty Ann and Alice would have done the same thing all the other heirs had done if Betty Ann and Alice had been made parties—they would have entered their appearance and consented to the entry of the order. In any event, the court's order construing the will is not binding on Betty Ann and Alice because jurisdiction was not acquired over them. Betty Ann and Alice have not been prejudiced because they are not bound by the decision and are free to bring their own action. The heirs who were parties, including defendant, had their day in court and can no longer complain. There may be some uncertainty with the court's order construing the will because of the possibility that Betty Ann and Alice will eventually bring their own action, but things would not be more certain if we set aside that order. If defendant had timely brought his objection to the attention of the court, judicial economy may have required that Betty Ann and Alice be made parties. Judicial economy would not be served at this late date by setting aside the order for failure to join a necessary party.

■ Defendant timely challenges the amount of the award of both the attorney fees and the executrix's fees. In this case, the trial court awarded the executrix $15,000 for her services and the attorney was awarded $30,000 for his services. Executrices and attorneys are entitled to reasonable compensation for their services. 755 ILCS 5/27—1, 27—2 (West 1992). The trial court has broad discretion in determining what constitutes "reasonable" compensation. *In re Estate of Coleman*, 262 Ill. App. 3d 297, 299, 634 N.E.2d 314, 316 (1994). Because the probate court has the requisite skill and knowledge to decide what is fair and reasonable compensation, a probate court's determination of such fees will not be overturned on appeal unless it is manifestly erroneous. *Coleman*, 262 Ill. App. 3d at 299, 634 N.E.2d at 316. The determination of what is reasonable must be based upon the facts and circumstances of each case. *Coleman*, 262 Ill. App. 3d at 299, 634 N.E.2d at 316. The factors to be considered include the size of the estate, the work involved, the skill evidenced by the work, time expended, the success of the efforts involved, and the good faith and efficiency with which the estate was administered. *Coleman*, 262 Ill. App. 3d at 299, 634 N.E.2d at 316.

With regard to the executrix's fees, the trial court noted the size of the estate, the responsibility assumed by the executrix, the amount of time that is required in administering such an estate, and the results achieved by the executrix, including the fact that she had obtained a "good price" for the sale of the testatrix's farm. With regard to the attorney fees, the court noted that the attorney had spent between 200 and 250 hours working for the estate. The court also noted that at 250 hours, the attorney was being compensated at a rate of $120 per hour, which the court determined to be a reasonable fee. The court also took into consideration the complexity of the estate and the fact that the estate had been "made more complex by reason of certain events that have occurred within the estate." On the basis of these facts, we cannot say the trial court's compensation of either the executrix or the attorney was manifestly erroneous.

■ Finally, defendant argues that it is improper for the trial court to deposit his share of the estate into the county treasury. See 755 ILCS 5/24—20 (West 1994) (providing for the deposit of unclaimed money with the county treasurer). This portion of defendant's appeal arises from a court order allowing the executrix, in the event that defendant did not negotiate the estate checks made payable to him, to deposit defendant's share of the estate into the county treasury, subject to further order of the court. Since it does not appear that a final distribution of the estate had been made, it does not appear that this has, in fact, happened. Defendant can prevent this result simply by negotiating the checks made payable to him at the time the final distribution is made. Neither the executrix nor the court is required to keep the estate open indefinitely.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GREEN and KNECHT, JJ., concur.