2024 IL App (2d) 230567-U
No. 2-23-0567
Order filed March 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-815 |
| WANYA CARTER WATKINS, | ) ) | Honorable Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence supported the trial court's findings that defendant committed a detainable offense, that he posed a danger to others or the community, and that no set of conditions would mitigate the danger he posed. Therefore, the trial court did not err in denying defendant's pretrial release.

¶ 2    Defendant, Wanya Carter Watkins, appeals from the denial of his pretrial release. For the following reasons, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4    On May 5, 2022, defendant was charged by information with aggravated vehicular hijacking with a firearm (720 ILCS 5/18-4(a)(4) (West 2022) (Class X felony)) and vehicular

hijacking (*id.* § 18-3(a) (Class 1 felony)). The information alleged that, on or about May 4, 2022, defendant took a 2009 Toyota Matrix from the person of Ramadhan Babile by use of force and threatening imminent use of force while armed with a firearm. Defendant was initially held without bond. On August 20, 2022, defendant was indicted on the two counts contained in the information and further indicted of three counts of armed violence while armed with a handgun, a Category I weapon (*id.* § 33A-2(a) (Class X felony)), two counts of unlawful use of a weapon (*id.* § 24-1.6(a) (Class 4 felony)), and one count of unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022) (Class 2 felony)), all related to the same incident of taking Babile's Toyota Matrix. Following the indictment, the previous no-bond order stood, but at some time thereafter bail was set at $200,000.

¶ 5      After the effective date of Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act or Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act, defendant moved on October 26, 2023, to reconsider the conditions of his pretrial release pursuant to section 110-7.5(b)(1) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-7.5(b)(1) (West 2022) (requiring hearings within 90 days)). His motion indicated that as of September 18, 2023, he was in custody on the offense of aggravated vehicular hijacking and would be released if he could post cash bail. The motion acknowledged that aggravated vehicular hijacking was an offense listed under paragraphs (1) through (7) of section 110-6.1(a) of the Code (*id.* § 110-6.1(a)).

¶ 6      In response, on October 31, 2023, the State filed a verified petition to deny defendant's pretrial release. As an exhibit, the State included the police department's synopsis sheet from May 4, 2022. The synopsis provided that Babile, who drove for Lyft, reported that his Toyota had been stolen at gun point. Officers thereafter apprehended defendant. Babile provided the following

statement to the police. He had been driving four black males when he pulled over to urinate. When he returned to the car, defendant, who had been in the back-middle seat, was now in the driver's seat. Defendant brandished a tan colored handgun, pointed it at Babile, and stated that he could kill him. Babile wrestled defendant for the gun, and the gun eventually fell in the backseat of the vehicle. Defendant exited the vehicle and reached for the gun, and he and Babile wrestled for the gun again. Defendant's three friends exited the vehicle and told defendant to stop. Defendant then fled in Babile's vehicle.

¶ 7     The trial court heard defendant's motion and the State's petition on November 29, 2023. The State informed the court that, after defendant fled in Babile's car, defendant crashed the car into a semi-truck. The State proffered that the semi-truck had a dash-cam, which captured defendant exiting the car after the crash and appearing to retrieve something from the backseat of the car before fleeing. When officers searched the vehicle in the aftermath, they found a gun magazine with six live rounds of ammunition in the driver's seat.

¶ 8     The defense proffered that defendant, if released, would reside with his mother at her apartment in Chicago. Counsel continued that defendant had resided with his mother in Chicago his entire life, and he had family members who could transport him to future court dates. Defense counsel further proffered that defendant had no prior criminal history.

¶ 9     The trial court found that the proof was evident and the presumption was great that defendant committed the offenses charged. It further found that the State proved defendant's dangerousness through the allegations of a prolonged carjacking with a weapon, and it found that no conditions could mitigate defendant's threat to the community, citing defendant's multiple opportunities to desist during the commission of the carjacking. In its written order, the court wrote that no less restrictive conditions would ensure the safety of the community because of the nature

and character of the offenses, the use of a weapon, defendant's decision-making and struggle with Babile, and his flight from the accident.

¶ 10   Defendant timely appealed.

¶ 11                                II. ANALYSIS

¶ 12   In defendant's notice of appeal, without any elaboration, he checked four boxes as grounds for relief: (1) the State failed to prove that he committed the offenses charged, (2) the State failed to prove that defendant posed a real and present threat to the safety of others or the community, (3) the State failed to prove that no conditions could mitigate defendant's real and present threat to others or the community, and (4) the trial court erred in its determination that no set of conditions would reasonably ensure defendant's appearance at later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. We note that the fourth ground is relevant to a decision to revoke a defendant's pretrial release pursuant to section 110-6(a) of the Code, not to a decision to detain pursuant to section 110-6.1 of the Code as occurred in this case. Therefore, the fourth ground is not a proper or viable ground for appeal in this case. See 725 ILCS 5/110-6(a) (West 2022) ("The State shall bear the burden of proving *** that no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for alter hearing or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor.").

¶ 13   The Office of the State Appellate Defender filed a memorandum in support of defendant's appeal, elaborating on one ground for relief: the trial court erred in finding that no conditions of release, particularly home detention at his mother's home in Chicago with electronic monitoring, could mitigate the threat defendant posed to the safety of other persons or the community. We find that defendant's remaining grounds for relief are forfeited, as we must not be advocates for

defendant and he has failed to argue the evidence of those grounds present in this case. See *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 16; *id.* ¶ 39 (McLaren, P.J., specially concurring).

¶ 14   Before reaching the merits of defendant's appeal, we recognize that proper procedure was not followed below. Although both parties and the trial court operated under the assumption that defendant was entitled to a hearing pursuant to section 110-7.5(b)(1) of the Code (*id.* § 110-7.5(b)(1)), in fact, he was entitled to a hearing under section 110-5(e) because he was a "person who remains in detention after having been ordered released with pretrial conditions, *including the condition of depositing security*." (Emphasis added.) *Id.* § 110-7.5(b) (entitling a defendant to a hearing under section 110-5(e)). Regardless, the State was permitted to petition to detain defendant in response to defendant's motion to reconsider the conditions of his release (see, *e.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶¶ 7-8), and thus the salient question is whether the trial court properly granted the State's petition to detain defendant.

¶ 15   Pretrial release is governed by article 110 of the Code. 725 ILCS 5/110-1 *et seq.* (West 2022). Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a), 110-6.1. Here, defendant's charged offenses included qualifying offenses. See *id.* § 110-6.1(a)(1) (defendant was charged with several non-forcible felonies that carried sentences of imprisonment).

¶ 16   To deny a defendant pretrial release, the trial court must find that the State proved the following by clear and convincing evidence: (1) the proof was evident or the presumption great that defendant committed a detainable offense (*id.* § 110-6.1(e)(1)), (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from

prosecution (*id.* § 110-6.1(e)(3)). We review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 17    Here, even if several of defendant's arguments were not forfeited, none of the trial court's findings were against the manifest weight of the evidence. The State's synopsis and proffers at the detention hearing supported that defendant indeed committed the offenses charged by taking possession of Babile's car while possessing a handgun, pointing the gun at Babile and threatening to kill him, and wrestling with Babile before driving off with Babile's car. As to the threat defendant posed to others or the community, the offense involved a firearm, the use of physical violence, and the specific threat of mortal violence. 725 ILCS 5/110-6.1(g)(1), (4), (7) (West 2022). In addition to defendant's threat to Babile's life, defendant stole and crashed Babile's car, endangering the lives of others. Given this context, it was not error to find that defendant posed a real and present threat to the safety of others or the community.

¶ 18    Last, the evidence supported the trial court's determination that no set of conditions could mitigate the threat defendant posed to the community. Defendant's crime involved the use of a firearm and the threat of mortal violence. His actions were apparently unprovoked, and he persisted with his dangerous and reckless actions despite his friends' protestations to stop. Although defendant did not have a prior criminal history, it was reasonable for the trial court to find that home detention and monitoring would not sufficiently mitigate the threat he poses to others or the community. Importantly, the threat persists for defendant to take similar actions as he did in this

case, when he was already living at his mother's home. Home confinement does not require 24-hour-a-day detention (730 ILCS 5/5-8A-2(c) (West 2022)), and it would not mean defendant would never leave his mother's home (see *id.* § 5-8A-4(A), (A-1) (listing approved absences from the home and requiring that a person have, at a minimum, no fewer than two days per week with movement outside the home)). Moreover, at any time, defendant can access a ride-share application and request another vehicle come to his mother's residence. The serious nature of defendant's alleged offenses, along with their random, unprovoked nature, support the trial court's finding that home confinement and monitoring would not adequately mitigate the real and present threat defendant poses to others and the community.

¶ 19    Accordingly, the trial court's findings were not against the manifest weight of the evidence and its decision to detain defendant was not an abuse of discretion.

¶ 20                                 III. CONCLUSION

¶ 21    For these reasons, the trial court did not err in denying defendant's pretrial release, and we affirm the order of the Kane County circuit court.

¶ 22    Affirmed.